**In the Matter of Millard Delloyd MONSON Leona Maxine Monson, Debtors.**

**FARMERS STATE BANK, Plaintiffs,**

v.

**Hugh A. MINER, Successor Trustee, Defendant.**

**Bankruptcy No. 80–04205–SJ.**
**Adv. No. 82–0741–SJ.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Nov. 18, 1982.

James C. Jarrett, Kansas City, Mo., for plaintiffs.

Hugh A. Miner, St. Joseph, Mo., for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT DIRECTING DEFENDANT TRUSTEE IN BANKRUPTCY TO TURN OVER PROCEEDS OF SALE OF LOT 38 TO PLAINTIFF LESS STATUTORY FEES

DENNIS J. STEWART, Bankruptcy Judge.

This action was commenced in both the bankruptcy court and the Circuit Court of Buchanan County and is bottomed on the plaintiff's continuous quest to have a certain tract of real property, described as lot 38 in Monson Addition to Cameron, DeKalb County, Missouri, or the proceeds of its sale, which came to be in the possession of the bankruptcy trustee, turned over to it. When the matter first came before the bankruptcy court for hearing, counsel for the plaintiff and the trustee in bankruptcy appeared before this court to announce that they had elected to try the case in the Circuit Court of Buchanan County.[1] This election was made by counsel for the plaintiff, *and by the trustee,* even though they were then reminded by the court that, under the jurisdictional statute then in effect, §§ 1471(b), (c), Title 28, United States Code, the bankruptcy court had jurisdiction concurrent with that of the state court to try the issues joined. Further, this court, by setting successive hearings to try and determine those issues in the event that a trial setting had not yet been secured in the state court, repeatedly reminded the parties, *including the trustee,* of their right and opportunity to have this matter resolved in this court.[2] The parties, nevertheless, continued to elect to have the matter determined in the state court.

In that court, ultimately, a consent judgment was entered into between the Farmers State Bank and the debtors, under the terms of which the title to lot 38, or the proceeds of its sale, were held to vest in the Farmers State Bank. At the request of the parties, a judgment was then entered in this court based upon the state court judgment.[3]

■ The trustee in bankruptcy who by now had possession of the proceeds of the

---

1. On August 7, 1981, this court entered its order in this title 11 case setting the matter of the validity of Farmers State Bank's release of its security interest of lot 38 for hearing on August 20, 1981. The trustee advised the court that he did not believe the hearing to be necessary in view of the state court actions and the attorney for Farmers State Bank appeared on August 20, 1981, and stated that the case could be tried in state court in October, 1981. Therefore, the scheduled hearing in this court was continued. Later, the court set another hearing, at which time counsel for the Farmers State Bank presented the consent judgment issued by the state court.

2. See note 1, *supra.*

3. See *Farmers State Bank v. Miner, Monson and Butcher,* Adversary Action No. 81–0366–SJ (Bkrtcy.W.D.Mo. Mar. 18, 1982), in which a judgment was entered, in conformity with the state court judgment to the following effect: "IT IS THEREFORE, ORDERED, ADJUDGED, and DECREED that Deed of Release executed the 24th day of November, 1978, and recorded November 30, 1978, in Book 189 at page 237 at the DeKalb County Recorder of Deed's Office in Maysville, Missouri, by plaintiff in favor of defendant Monson on real property described as:
'All of Lot 38 in Monson's Addition to Cameron, DeKalb County, Missouri,'
is hereby set aside and that Deed of Trust dated the 1st day of May, 1976, and Recorded on May 11, 1976, in Book 184 at Page 36 at the DeKalb County Recorder of Deed's Office in Maysville, Missouri, on said real property is hereby declared to be first and foremost Deed of Trust on the abovestated Lot 38 in MONSON'S ADDITION to Cameron, DeKalb County, Missouri, in favor of Farmers State Bank and that the Deed of Trust dated June 1, 1980, filed August 14, 1980, and recorded in Book 190 at Page 1220 at the DeKalb County Recorder of Deed's Office in Maysville, Missouri, in favor of Ora M. Butcher is a second mortgage, junior to plaintiff's Deed of Trust. All costs taxed to plaintiff herein. Let execution issue therefor."

sale of lot 38[4] did not voluntarily turn over the proceeds of the sale in compliance with the judgments in those actions to which, technically speaking, he was not a party. Therefore, Farmers State Bank filed the action now before the court to compel the trustee to turn over the proceeds.

A hearing of the matter was conducted by the court on September 2, 1982, at which Farmers State Bank appeared by its counsel, James C. Jarrett, Esquire, and Ronald S. Weiss, Esquire, and the trustee appeared personally and as his own counsel. The trustee thereupon raised the following defenses to the plaintiff's request for turnover of the proceeds of sale of lot 38.

1. If the proceeds are turned over to Farmers State Bank, the bank will thereby, in combination with other sums received from the debtors, receive a windfall in an amount which exceeds the total amount due and owing from the debtors; and

2. The bank's claim against the bankruptcy estate is limited by the doctrine of res judicata to the total of the proceeds of lot 38 and therefore the bank cannot exact from the estate any value in excess of that total.[5]

The trustee's contentions concerning the extent of the claim are, on the basis of the foregoing facts, res judicata by reason of his prior, express declination to raise that issue in this court, although granted an express opportunity to do so, and by reason of his, in substance, opting out of the state court action and agreeing to abide its judg-ment.[6] "It is fundamental that a final judgment by a court of competent jurisdiction is res judicata as to the parties thereto, not only as to all matters litigated and determined by such judgment, but also as to all relevant issues which could have been presented." Hudson v. North American Surety Co. of New York, 377 F.2d 698, 699 (8th Cir.1967). See also Matter of Nitsche, 11 B.R. 443 (Bkrtcy.W.D.Mo.1981), and authority therein cited. The plaintiff's complaint for turnover of the proceeds is not foreclosed by the disallowance of the claim in this case when the disallowance was, by its own terms, conditional upon its receiving the proceeds of the sale of lot 38.[7]

■ Further, the trustee's contentions of the realization of an excess were the subject of the plenary hearing held in this action on September 2, 1982, and an excess was not clearly shown.[8] If the plaintiff at any time realizes an excess, it is duty bound, under pain of contempt citations for violation of §§ 362 and 524 of the Bankruptcy Code, to turn that excess over to the bankruptcy estate. But the litigation over the proceeds of sale of lot 38 is now ended and the trustee, under well-established applicable legal principle, must turn them over to plaintiff less his statutory fee under § 326 of the Bankruptcy Code. It is therefore, accordingly,

ORDERED AND ADJUDGED that the defendant trustee in bankruptcy turn over to plaintiff the proceeds of sale of lot 38 after subtracting his statutory fee pursuant to § 326 of the Bankruptcy Code therefrom.

---

4. Farmers State Bank agreed to the sale on condition that the trustee turn over the proceeds to them in the event they won the state court litigation.

5. This contention is based upon the trustee's unopposed objection to the claim of the Farmers State Bank on the following bases:

   "The claim of the bank should only be against Lot 38, if litigation presently pending allows the bank to reassert the lien they once had on this property."

6. See the facts set out in note 1, supra. In addition, in Farmers State Bank v. Monson, Adversary Action No. 81–0970–SJ (Bkrtcy.W. D.Mo. June 18, 1981), relief from the stay was granted for the purpose of trying the action concerning lot 38 in the state court. Subsequently, by order of this court of August 7, 1981, a hearing was set for August 20, 1981, on the issue of the validity of the release of lot 38, inviting the trustee to attend the hearing. The trustee did not attend and the attorneys for Farmers State Bank and the Monsons attended and stated that they had elected to try the case in state court.

7. See note 5, supra.

8. The trustee then relied largely on testimonial admissions elicited from the witnesses for Farmers State Bank which, at best, were inconclusive.