RANGER CONSTRUCTION
COMPANY, Appellant,

v.

PRINCE WILLIAM COUNTY SCHOOL
BOARD, Appellee,

v.

The TRAVELERS INDEMNITY
COMPANY, Appellant.

RANGER CONSTRUCTION
COMPANY, Appellee,

v.

PRINCE WILLIAM COUNTY SCHOOL
BOARD, Appellant,

v.

The TRAVELERS INDEMNITY
COMPANY, Appellee.

Nos. 78–1241, 78–1242.

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1979.

Decided Aug. 3, 1979.

Peter M. D'Ambrosio, Washington, D. C. (Paul J. Walstad, Vienna, Va., Michael B. Rosenberg, Joseph H. Kasimer, Washington, D. C., Walstad, Wickwire, Peterson Gavin & Asselin, P. C., Vienna, Va., on brief), for appellants in No. 78–1241, and appellees in No. 78–1242.

Lloyd T. Smith, Jr. and Melvin E. Gibson, Jr., Charlottesville, Va. (Tremblay & Smith, Charlottesville, Va., on brief), for appellee in No. 78–1241, and appellant in No. 78–1242.

Before RUSSELL and WIDENER, Circuit Judges, and DUMBAULD, Senior District Judge for the Western District of Pennsylvania, Sitting by Designation.

**DONALD RUSSELL, Circuit Judge:**

This appeal concerns a construction contract under which the appellant-cross-appellee Ranger Construction Company (hereafter Ranger), with its co-appellant The Travelers Indemnity Company (hereafter Travelers) as surety on its performance bond, agreed to erect a senior high school in Manassas, Virginia, for the appellee-cross-appellant Prince William County School Board (hereafter School Board). Controversy developed between Ranger and the School Board in connection with performance under the contract. Ranger filed an action against the School Board alleging breaches in the contract by the latter, and the School Board, bringing in Travelers as a third-party, answered and counterclaimed against Ranger and its surety Travelers for certain breaches claimed in turn by it against Ranger. Ranger did not, however, discontinue performance under the contract with the commencement of its action but proceeded to perform until the School Board notified it of the contract's termination, alleging justification by reason of the failure of performance in various particulars by Ranger.

The issues in the case at this point became the propriety of the termination of the contract by the School Board, and, if proper, the damages to which the School Board was entitled therefor. These two issues were separated for trial. The validity of the contract's termination by the School Board was tried first before a jury and resulted in a verdict upholding termination. Judgment was duly entered on that verdict and the district court then by order of reference appointed a Special Master to hear testimony and to make findings of fact on the issue of damages. Extensive hearings were had before the Special Master, who filed his Report stating the damages to which he found the School Board entitled. Exceptions were filed to this Report and were heard by the district judge. In his decision on the exceptions, the district judge affirmed some of the findings of the Special Master and modified or reversed others. Ranger, Travelers and the School Board have all appealed. The appeal of the

parties is confined solely to the propriety of the damage claim asserted by the School Board due to the termination of the contract.

Claims of error by Ranger and Travelers in the district court's allowance of damages are directed at four items. These items are:

1. The allowance of attorney's fees in favor of the School Board for representation in connection with the establishment of liability against Travelers under the performance bond;

2. Failure to allow Ranger credit against the damages found against it for materials paid for and on hand at time of the termination of the contract by the School Board;

3. Denial of a credit for sales taxes charged against them as damages under the contract;

4. Inclusion in the damages of a hypothetical value of the warranty due the School Board under the contract, and the value of an assumed cost of repairing some nonconforming work done by a subcontractor of Ranger prior to the termination of the contract.

In its cross-appeal the School Board, on the other hand, would fault the district judge for his failure to allow as delay damages, after termination of the contract, "interest at the legal rate from the date of termination [of the contract] until substantial completion of amounts paid Ranger and on amounts paid others for completion work and for owner-furnished equipment and site improvements." It, also, contends that the district judge erred in reducing its claim for attorney's fees by $111,567.50 and its claim of legal costs and expenses by $30,415.74.

We shall consider separately these several claims of the respective parties, beginning with the claims of error by Ranger and Travelers.

Ranger and Travelers attack first the award of attorney's fees and expenses to the School Board against Travelers for legal services rendered in establishing liability under its performance bond. Since this is a diversity case, the right to such attorney's fees is controlled by Virginia law. It is the settled law of Virginia that, "in the absence of any contractual or statutory liability therefor, attorneys' fees and expenses incurred by the plaintiff in the litigation of his claim against the defendant, aside from the usual taxed court costs, are not recoverable as an item of damages in actions *ex contractu*." *Hiss v. Friedberg* (1960) 201 Va. 572, 112 S.E.2d 871 at 875.[1] There is, of course, an exception to this general rule to the effect that "where a breach of contract has forced the plaintiff to maintain or defend a suit with a third person, he may recover the counsel fees incurred by him in the former suit provided they are reasonable in amount and reasonably incurred."[2]

1. This Virginia rule is in accord generally with the result reached in other decisions in that jurisdiction and in other jurisdictions were statutory law does not prescribe a different rule. *Wallace Process Piping Co. v. Martin-Marietta Corp.* (E.D.Va.1965) 251 F.Supp. 411, 420; *Glassman Const. Co., Inc. v. Maryland City Plaza, Inc.* (D.Md.1974) 371 F.Supp. 1154, 1163. *Cf., Vaughan v. Atkinson* (4th Cir. 1961) 291 F.2d 813, 815, *reversed* as inapplicable to admiralty case, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (for exposition of this construction of the reversal, *see Skehan v. Bd. of Trustees of Bloomsburg St. College* (3d Cir. 1976) 538 F.2d 53 at 57–58, *cert. denied* 429 U.S. 979, 97 S.Ct. 490, 50 L.Ed.2d 588). And this rule has been applied in the principal-surety context as here. *Cincinnati Ins. Co. v. City of Talladega* (Ala. 1977) 342 So.2d 331, 338; *Faulkner Concrete Pipe Co. v. United States Fidelity & Guaranty Co.* (Miss.1969) 218 So.2d 1, 3; *Maloney v. Oak Builders, Inc.* (1970) 256 La. 85, 235 So.2d 386, 390–91; *Graham v. San Antonio Machine & Supply Corp.* (Tex.Civ.App.1967) 418 S.W.2d 303, 308, *writ refused n. r. e.; American Employers' Insurance Company v. Hopp* (1975) 31 Ill.App.3d 132, 333 N.E.2d 557, 558.

2. *Ibid.*, 112 S.E.2d at p. 876.
To the same effect *see Southern National Bank of Houston v. Crateo, Inc.* (5th Cir. 1972) 458 F.2d 688, 696 and *H. Molsen & Co., Inc. v. Flowers* (W.D.Tenn.1973) 62 F.R.D. 14, 16. In the latter case the rule is accurately stated:
"There is a special rule for awarding attorneys' fees in actions for breach of contract. Plaintiff may recover counsel fees only if defendant's breach of contract has caused litigation against third parties for which plaintiff had to hire counsel. Plaintiff may

The court in that case reiterated, however, quoting from 5 Corbin on Contracts, § 1037, that this exception "does not deal with the cost of litigation with the defendant himself." [3] This rule has been consistently applied in suits under both performance and indemnity bonds or contracts. *Continental Realty Corporation v. Andrew J. Crevolin Co.* (S.D.W.Va.1974) 380 F.Supp. 246, 256; *General Electric Company v. Mason & Dixon Lines, Inc.* (W.D.Va.1960) 186 F.Supp. 761, 765.

■ Manifestly, then, under controlling Virginia law attorney's fees incurred by the School Board in establishing a breach of contract by Ranger, absent some specific provision in the contract between the parties or statutory authority for such a grant, could not be recovered against Ranger. The School Board concedes there is no specific provision in the contract for such an award and it points to no Virginia statute giving a right to such an award. In fact, the School Board seems to assume it has no such right of recovery as against Ranger; it would base its right to recover for such attorney's fees on the performance bond given by Travelers. The performance bond given by Travelers, however, makes no provision for the recovery of such fees. It is just what its designation signifies; it is a bond specifically conditioned on the performance by Ranger of its obligations under the contract with the School Board. The obligation of the Surety Travelers is accordingly to be measured by the promises and specific liabilities of its principal Ranger, and those obligations can be no broader or more extensive than those of its principal. *Federal Surety Co. v. Basin Construction Co.* (1931) 91 Mont. 114, 5 P.2d 775, 778; *Al Smith's Plumbing & Heating Service, Inc. v. River Crest, Inc.* (Ct.App.La.1979) 365 So.2d 1122, 1127. Since, as we have seen, Ranger is not liable for attorney's fees incurred by the School Board in litigating its liability for breach of the contract, it would seem *a fortiori* the Surety Travelers cannot be liable.

■ There was some suggestion at argument that perhaps certain language in the bond might be construed to include by implication a right thereunder to recover attorney's fees. The language relied on for this suggestion appears in the provision of the bond dealing with the situation where the Owner (the School Board) has declared the Contractor (Ranger) in default. In that event, the bond gives the Surety the right to complete the contract in accordance with its terms by either contracting with others to complete the project or, in conjunction with the Owner, contracting with an agreed low bidder to complete the project. In completing the contract under those circumstances, the Surety obligated itself to "make available as Work progresses * * * sufficient funds to pay the cost of completion less the balance of the contract price; *but not exceeding, including other costs and damages for which the Surety may be liable hereunder, the amount set forth in the first paragraph hereof.*" (Italics added) The italicized language, the School Board intimated, might be considered to enlarge the Surety's liability to include attorney's fees as an element of damages in a suit to establish breach of the contract by the Contractor.

It would seem, however, to be sufficient answer to this suggestion of the School Board for an implied right under the bond to attorney's fees that neither the School Board nor Travelers proceeded under the provision of the performance bond relied on to support this contention of the School Board. Travelers never agreed that Ranger had breached the contract and never undertook to complete the project under the terms of its performance bond relied on by the School Board. Nor for that matter did the School Board rely on this provision for the actions it took; it terminated the contract and took over the completion of the project based on the rights given it by Section 14.2.1 of the contract between it and Ranger. This section authorized the

not recover for attorneys' fees paid by the plaintiff in his suit against defendant for breach of contract."

3. *Ibid.,* 112 S.E.2d at 876.

School Board as Owner to terminate, under certain conditions, the contract and to "take possession of the site and of all materials, equipment, tools, construction equipment and machinery thereon owned by the Contractor and [to] finish the Work by whatever method he may deem expedient." There is no language in that section of the contract, remotely suggestive of any right to recover of the Contractor (Ranger) attorney's fees incurred in establishing a breach of the contract.

Equally dispositive of this suggestion of the School Board is the construction which has been judicially given the italicized language in the performance bond. Uniformly that language has been found to give no basis for an award of attorney's fees. *National Union Indemnity Company v. R. O. Davis, Inc.* (5th Cir. 1968) 393 F.2d 897, 900; *Todd Shipyards Corporation v. Jasper Electric Service Co.* (5th Cir. 1969) 414 F.2d 8, 18; *Continental Realty Corporation v. Andrew J. Crevolin Co.* (S.D.W.Va.1974) 380 F.Supp. 246, 256; *Wm. Cameron & Co. v. American Surety Co. of New York* (Tex. Comm.App.1932) 55 S.W.2d 1032, 1035–36 (judgment adopted). As the court remarked in *National Union,* "costs" are quite different from and do not include "attorney's fees;" and in those cases in which attorney's fees have been granted, the bond almost without exception had specific language authorizing the recovery of attorney's fees for breach of the contract. Thus, in *Whitten v. Alling & Cory Co.* (Tex.Civ. App.1975) 526 S.W.2d 245, 249, *writ refused,* the bond went beyond guaranty of performance by the Contractor and included an obligation "to pay all costs and expenses including *attorney's fees* incurred by appellee in attempting to collect any amount due under the guaranty." (Italics added) Similarly, in *Dale Benz, Inc. v. American Casu-*

*alty Co.* (9th Cir. 1962) 303 F.2d 80, 85, n. 9, the surety's obligation expressly covered "expenses and attorney's fees incurred by the Contractor because of any default of [the] Subcontractor." This is also true of *City of Grandview, Missouri v. Hudson* (8th Cir. 1967) 377 F.2d 694, 697 and of *Mason v. City of Albertville* (1963) 276 Ala. 68, 158 So.2d 924, 927.[4] Neither is there any Virginia statute authorizing an award of attorney's fees as an element of recovery for breach of the contract by a Contractor, such as was the case in *Hollywood Golf Estates, Inc. v. Nello L. Teer Company* (5th Cir. 1965) 353 F.2d 485, 489 and *United States Fidelity & Guar. Co. v. Hendry Corporation* (5th Cir. 1968) 391 F.2d 13, 20–21, *cert. denied* 393 U.S. 978, 89 S.Ct. 446, 21 L.Ed.2d 439 (both decided under a Florida statute granting such right) or, such as in *National Surety Corporation v. United States* (5th Cir. 1964) 327 F.2d 254, 257, *cert. denied* 379 U.S. 819, 85 S.Ct. 38, 13 L.Ed.2d 30 (decided under a Texas statute found to authorize such an award),[5] or such as in *State of Kansas ex rel. American Steel Works v. Hartford Accident & Ind. Co.* (Missouri Ct. App.1968) 426 S.W.2d 720, 724 (decided under a Kansas statute granting such right), or such as in *Vern Barnett Const. Co. v. J. A. Hadley Const. Co.* (1973) 254 Ark. 866, 496 S.W.2d 446, 451–52 (decided under an Arkansas statute authorizing such an award) or such as in *Fred Christensen, Inc. v. Hansen Const. Co.* (1933) 142 Or. 549, 21 P.2d 195, 197–98 (decided under an Oregon statute).

The School Board recognized the difficulties confronted by it in seeking attorney's fees under the performance bond, in view of the settled principles just discussed. It seems to assume it can surmount the difficulty by construing the performance bond as an indemnity contract.[6] It likens the

---

4. The rule in Alabama, in the absence of specific provision in the bond for attorney's fees, is the same as that in Virginia, which under those circumstances denies attorney's fees. *Cincinnati Ins. Co. v. City of Talladega, supra,* 342 So.2d at 338.

5. *See Graham v. San Antonio Machine & Supply Corp.* (Tex.Civ.App.1967) 418 S.W.2d 303,

308, *writ refused n. r. e.,* stating the general rule apart from statute.

6. The position of the School Board is thus stated in its brief: "Neither the contract between the School Board and Ranger nor the performance bond of The Travelers Indemnity Company contains an express provision concerning attorney's fees. Therefore, in order for the

performance bond in this case to "a personal liability insurance policy," under which the insurance carrier "has contracted to defend and pay any judgment arising out of specified contract." An insured under such a policy is entitled, it observes, to recover attorney's fees incurred in defending a suit by a third-party within the coverage of the bond. But the attorney's fees being recovered in the situation instanced by the School Board are not the fees incurred by the plaintiff in establishing a right to indemnity under the policy, but the fees incurred by the plaintiff in being forced to defend itself in a third-party suit by reason of the insurance company's failure to defend as it had agreed to do under the contract. The distinction between the two situations was concisely put by the court in *Key Savings & Loan Assn. v. Travelers Indemnity Co.* (1973) 32 Colo.App. 358, 513 P.2d 737, 740:

> "In awarding the [attorneys] fees the trial court relied on *National Union Fire Ins. Co. v. Denver Brick & Pipe Co.*, 162 Colo. 519, 427 P.2d 861. However, the fees awarded in that case to the obligee of the bond were fees incurred in defending an action to foreclose mechanics' liens which the bonding company was obligated to pay under its bond. The present action involves a dispute between two contracting parties over the obligations imposed by the contract. The attorney fees for the prosecution of such a suit are not recoverable." [7]

This is but another way of stating the same distinction made by the court in *Hiss.* Af-

ter declaring that attorney's fees were not recoverable in "actions *ex contractu*" between the parties to the contract, it distinguished the case such as the School Board has hypothesized "where a breach of contract has forced the plaintiff to maintain or defend a suit with *a third person*;" in that situation, the plaintiff "may recover the counsel fees incurred by him in the former suit * * *. 'The rule just stated does not deal with the cost of litigation with *the defendant* himself.' " [8]

The distinction between the right to recover legal fees in the two instances stated in *Key Savings*, (*i. e.*, that an indemnitee is entitled to recover reasonable attorney's fees and legal costs as a result of suits *by or against third parties in reference to a claim against which he is indemnified* but he is not entitled to attorney's fees and expenses in suing on the indemnity contract itself) has been often stated in the texts and in the authorities and has been enforced in both the indemnity and performance bond context. *Vallejos v. C. E. Glass Co.* (10th Cir. 1978) 583 F.2d 507, 510; *E. C. Ernst, Inc. v. Manhattan Const. Co. of Texas* (5th Cir. 1977) 551 F.2d 1026, 1037, *cert. denied* 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 765 ("payment for attorney's fees incurred in litigation with third parties concerning the matter indemnified against" only authorized); *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (8th Cir. 1974) 491 F.2d 192, 198, n. 9; *General Electric Company v. Mason & Dixon Lines, Inc.* (W.D.Va.1960) 186 F.Supp. 761, 765; *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.* (Del.1978) 394 A.2d

School Board to recover, it must show that either in the contract or the bond, or in the statute requiring the bond, or from the relationship between the parties, there is an implied covenant running to the School Board to indemnify it or save it harmless from liability in excess of the contract amount, and the covenant is sufficiently broad to include the School Board's cost of litigation."

7. This distinction has been recognized by the Surety in this case and it is implicit in a part of the district court's decree. After the contract was terminated, the School Board was forced to employ counsel to prepare new contracts, etc., with the parties engaged to complete the contract. Those were fees incurred in dealings with *third parties* which were forced upon the School Board as an expense of completing the

job as clearly as the employment of carpenters or bricklayers might have been. After it had been held that Ranger had breached its contract and that the School Board had properly terminated the contract, those were attorney's fees clearly allowable to the School Board as a part of the costs of completing the contract, after breach by Ranger, the very thing the bond of the Surety was given to assure. The Surety has agreed that these fees are recoverable. But such fees are different from those to establish that Ranger had breached the contract, giving the School Board a right to damages. And the district court recognized such differences because it separated the allowances for the two items of services.

8. 112 S.E.2d at 875–76 (Italics added).

1160, 1165 (the rule covers attorney's fees incurred "to defend against *third party* claims as opposed to claims among contracting parties *vis-a-vis* each other" (Emphasis original)); *Sendroff v. Food Mart of Conn., Inc.* (Conn.Sup.Ct.1977) 34 Conn.Sup. 624, 381 A.2d 565, 566 ("The allowance [of attorney's fees] is limited to fees incurred in defense of the claim indemnified and would not include services rendered in establishing the right of indemnity"); "Indemnity," 42 C.J.S. § 13, pp. 586–87; "Indemnity," 41 Am.Jur.2d § 36, pp. 726–27 ("[t]he allowance of attorneys' fees is limited to the defense of the claim indemnified against and does not extend to services rendered in establishing the right of indemnity").

■ It follows that, when the School Board established that there had been a breach of the contract by Ranger, (which it did in the jury trial on the separated issue of liability for breach) it became entitled to damages from Ranger and/or its surety. In fixing those damages, the School Board could recover any valid legal damages caused by such breach. Thus, recovery of attorney's fees incurred by it in negotiating and drafting new contracts with third parties who were to complete the contract was manifestly warranted. Such fees were as much a part of the costs of completion of the contract as were the costs of employing carpenters and bricklayers. As we have observed, Ranger and Travelers offer no objection to the inclusion of such fees in the recoverable damages. But attorney's fees for establishing the basic claim of breach of performance, which is the predicate for a right of indemnity, and for proving the elements of damages for such breach are clearly not recoverable under either Virginia law or under that generally recognized in other jurisdictions, apart from some contrary statute or provision in the contract itself. And this is so whether the bond be construed as a performance bond or as a bond of indemnity. It is the allowance of those attorney's fees to which Ranger and Travelers object. Their objection, as the foregoing discussion makes clear, is well taken. Fortunately, the district court separated these attorney's fees from the fees allowed in connection with completion of

the contract by the School Board. It is not necessary, therefore, to remand the cause in order to make a proper division of the attorney's fees allowed between the two types of services. The allowance of attorney's fees incurred in establishing liability under the contract and performance bond by the School Board in the amount of $119,350.85 was erroneously made by the district court and cannot be sustained.

■ The second claim of Ranger and Travelers, however, must be disallowed. There was concededly a substantial amount of material needed for use in completing the project on the site at the time the School Board terminated Ranger's performance under the contract. Ranger and its Surety claim credit for the fair value of this material as used in the completion of the project. The School Board does not dispute the right of Ranger for credit for such materials, so far as such materials were usable in completing the contract. Its contention was that Ranger had received credit for such materials. In soliciting bids for the completion of the project, the School Board advised all bidders that they were to make proper allowances for, and take into account in their bids, all material on hand at the site, which was usable in their performance of their portion of the contract, should their bid be accepted. And all bids were submitted, taking into account the materials on hand. Accordingly, the costs of completing the project took into account and gave Ranger and its Surety credit for the usable material on hand, as provided in their bids by the contractors who completed the project. The good faith of the School Board in all these transactions is conceded. Under these circumstances, it cannot be said that Ranger and Travelers have not been given due credit in the damages assessed against them for the reasonable usable value of the materials on hand at the time of the termination of Ranger's contract.

■ Neither are Ranger and Travelers entitled to a credit for state sales taxes, paid by the various contractors who completed the contract on materials purchased by such contractors. This claim rests on the theory that the School Board was entitled

to an exemption from sales taxes for all purchases made in connection with the construction of the school building involved in this proceeding. The exemption granted by statute for School Board's purchases applied only to purchases made directly by and charged to the School Board itself and did not cover purchases made by contractors engaged in the performance of a contract with the School Board. This is the uniform construction which has been followed in connection with purchases as made by highway contractors performing contracts with the State Highway Commission and that construction would be applicable to the contract here. Va. Sales Tax Regulations, § 1.27.1(b).

The last two claims of Ranger and Travelers relate to a charge made against them for non-conforming duct work ($16,252.00) and to an award of $44,830.00, estimated as the value of a one-year warranty which, upon completion of the project, was to be given by Ranger, but which, because of the termination of Ranger's contract by the School Board, was not given. The objection of Ranger and Travelers to the charge for non-conforming duct work is based on the fact that this expense was included in the contract made by the School Board after it took over the completion of the project and was included in the damage costs of completion allowed the School Board by way of damages for breach of the contract. Since the amount of this subcontract, including the obligation to correct the non-conforming work, has been allowed as a valid element of damages against Ranger and its Surety, it would be manifestly unfair to permit independent recovery of this item; any other result would amount to double recovery. It does not matter that the subcontractor may have made additional claims subsequently on the School Board on account of this repair work. The School Board assumed this risk when it, on its sole responsibility, accepted the bid of its subcontractor and fixed the price for correcting any defective duct work performed by Ranger's subcontractor.

■ The warranty claim of the School Board is likewise not an allowable cost item against Ranger. More than a year had

elapsed since completion of the project and no claim that would have been cognizable under the agreed warranty, if given, has arisen. The School Board, therefore, has suffered no loss as a consequence of the failure of Ranger to execute a warranty as agreed upon, assuming that the obligation continued after the termination of the contract. Under these circumstances, the School Board is not entitled to any claim against Ranger and its Surety by reason of the provision for a one-year warranty by Ranger.

In summary, we find that the allowance of attorney's fees and legal costs against Travelers under its performance bond for legal services rendered in its suit to establish liability under the performance bond ($119,350.85, plus $1,235.15 costs) and of the award of damages for non-conforming duct work ($16,252.00) and for elimination of warranty ($44,830.00), in favor of the School Board against Ranger and Travelers, is improper. All other objections of Ranger and Travelers are, however, found to be meritless for the reasons already given.

■ The School Board has cross-appealed from two rulings of the district court. First, it objects to the standard used by the district court in calculating delay damages suffered by it. The contract between the parties fixed such damages at $500 per day. The period of delay, to which such liquidated damage provision would be applicable, was 504 days. The district court accordingly allowed the School Board delay damages in the amount of $252,000.00 (504 days x $500). The School Board, however, asserts that the proper measure of delay damages would be liquidated damages for the delay up to the date of termination of the contract (148 days x $500 or $74,000.00) and legal interest on (1) all sums paid Ranger prior to termination, (2) all amounts spent in completing ·the building after termination of Ranger's contract, and (3) all other amounts expended in connection with the school project, such as land acquisition, site utilities, etc. We think the district court correctly used as the measure of delay damage the liquidated damage provision of the contract. *Southern Pac. Co. v. Globe Indemnity Co.* (2d Cir. 1927) 21 F.2d 288, 291,

*cert. denied* 279 U.S. 860, 49 S.Ct. 418, 73 L.Ed. 1000 (1928); *Trans World Airlines v. Travelers Indemnity Company* (8th Cir. 1959) 262 F.2d 321, 325; *Dale Benz, Inc. Contractors v. American Casualty Co., supra,* 303 F.2d at 85.

The judgment of the district court, so far as the awards to the School Board of (a) attorney's fees and costs incurred in establishing the right to recover under the performance bond, (b) costs of correcting defective duct work, and (c) allowance for warranty bond not given, is reversed, but, in all other respects, is affirmed. The cause is remanded to the district court for modification of judgment in accordance with the opinion herein.

*REVERSED IN PART, AFFIRMED IN PART* and *REMANDED FOR MODIFICATION OF JUDGMENT.*